**Thomas HILL, Appellant**

v.

**Ronald J. OFALT, Ronald J. Ofalt, Jr., and The Milestone Restaurant Company, Inc., Appellees.**

Superior Court of Pennsylvania.

Submitted July 9, 2013.
Filed Feb. 5, 2014.

Richard S. Bishop, Kingston, for appellant.

* Retired Senior Judge assigned to the Superior Court.

1. At the time the parties entered into their agreement, Appellant was "the owner/opera-

---

Paul J. LaBelle, Scranton, for appellees.

BEFORE: MUNDY, OLSON and STRASSBURGER,* JJ.

OPINION BY OLSON, J.:

Appellant, Thomas Hill, appeals from the order entered on July 13, 2012 that sustained preliminary objections in the nature of a demurrer, which were filed by Ronald J. Ofalt, Sr. and Ronald J. Ofalt, Jr. (hereinafter collectively "Appellees" or "the Ofalts"). The order also dismissed Appellant's complaint. We vacate in part and remand.

Since the current lawsuit was dismissed in response to preliminary objections in the nature of a demurrer, we base the following factual recitation upon the well-pleaded facts contained within Appellant's complaint. *See Burgoyne v. Pinecrest Cmty. Ass'n*, 924 A.2d 675, 679 (Pa.Super.2007) ("[w]hen reviewing the dismissal of a complaint based upon preliminary objections in the nature of a demurrer, we treat as true all well-pleaded material, factual averments and all inferences fairly deducible therefrom").

In late 2006 or early 2007, Appellant and Appellee Ronald J. Ofalt, Jr. (hereinafter "Appellee Ofalt, Jr.") entered into an oral agreement to form a Pennsylvania corporation named Milestone Restaurant Company, Inc. (hereinafter "Milestone").[1] "Milestone's [principal] purpose was the creation and operation of [a new Clarks Summit, Pennsylvania] restaurant/bar known as 'Milestone Ranch.'" Appellant's Complaint, 1/4/12, at ¶¶ 6–7. Appellant and Appellee Ofalt, Jr. further agreed: that they would be "equal 50/50 partners

tor of the well-established Clarks Summit[, Pennsylvania] restaurant/bar known as 'State Street Grill'" and had known Appellee Ofalt, Jr. for approximately six or seven years. Appellant's Complaint, 1/4/12, at ¶ 6.

in Milestone;" that Appellant would "provide some of the start-up capital to open Milestone Ranch and [Appellant] would use his restaurant expertise and the good trade credit he established through [his ownership and operation of the] State Street Grill to get Milestone Ranch up and running;" and, that after Milestone Ranch was "up and running," Appellee Ofalt, Jr. "would run the day-to-day operations of the business." *Id.* at ¶¶ 9–10. In accordance with their agreement, Milestone was incorporated under the laws of Pennsylvania and, following incorporation, Appellant and Appellee Ofalt, Jr. became "the sole officers, directors[,] and shareholders of Milestone." *Id.* at ¶¶ 4 and 9.

In early 2007, Appellant and Appellee Ofalt, Jr. "jointly procured[,] on behalf of Milestone[,] a [$250,000.00] loan from Peoples National Bank as well as a [$50,000.00 Small Business Association] loan." *Id.* at ¶ 11. Appellant and Appellee Ofalt, Jr. personally guaranteed both loans. *Id.* Milestone then used the money to "purchase the necessary equipment, furnishings, computer system and[,] supplies needed for the restaurant" and to lease and renovate certain property located at 200 Johnson Road in Clarks Summit. *Id.* The 200 Johnson Road property was intended to serve both as the space for the Milestone Ranch restaurant and as "guest rooms[,] located on the second floor of the premises[,] that were to be rented out to provide additional income to Milestone, and thereby, to [Appellant and Appellee Ofalt, Jr.]." *Id.* at ¶ 12.

Milestone Ranch opened in August 2007 and, for the next four months, Appellant "worked on almost a full time basis at Milestone to help set up the restaurant and bar, train the staff[,] and provide [Appellee] Ofalt, Jr. with the necessary assistance, guidance[,] and tools needed to launch" the venture. *Id.* at ¶ 13. In January 2008, Appellant "turned over the helm of the Milestone Ranch to [Appellee] Ofalt, Jr. and [Appellant] went back to running State Street Grill, as the parties originally contemplated and agreed." *Id.* at ¶ 14.

However, after Appellee Ofalt, Jr. assumed control over Milestone Ranch, Appellee Ofalt, Jr. "began unlawfully using [the] business as a 'cash cow' to benefit himself, his family[,] and friends." *Id.* at ¶ 17. Appellee Ofalt, Jr.'s improper actions included: "frequently providing his friends, family ... [,] and acquaintances with free alcoholic beverages and food;" attempting to conceal the free beverages and food by "voiding" the transactions on the computer system; "pocket[ing]" money from Milestone Ranch's outside bar; withdrawing funds from Milestone and "diverting them to either himself or others, including his father, [Appellee Ronald J.] Ofalt, Sr." [(hereinafter "Appellee Ofalt, Sr.")]; frequently staying in the apartments above the restaurant "rent free" and "allowing others to [ ] stay in [the] apartments for either no charge or by paying [Appellee Ofalt, Jr.] directly without accounting to Milestone for said rents;" and, "deducting from Milestone's employees' bi-weekly paychecks what he portrayed as the required federal, state[,] and local tax withholdings"—but then failing to remit the withholdings to the appropriate taxing authorities. *Id.* at ¶¶ 17–22.

The above actions and omissions: forced Milestone Ranch to close in March 2010; caused Milestone to "fall in arrears to [the] taxing authorities [in] an amount in excess of [$250,000.00];" caused the Pennsylvania Department of Revenue to impose a lien against both Appellant and Milestone in the amount of $79,000.00; caused Milestone to default on both the Peoples National Bank and Small Business Association loans—both of which Appellant personally guaranteed; and, exposed Mile-

stone and Appellant to debts in excess of $500,000.00. *Id.* at ¶¶ 22–26.

On January 4, 2012, Appellant filed a complaint—on his individual behalf—and named Appellee Ofalt, Jr., Appellee Ofalt, Sr., and Milestone as defendants.[2] The six-count complaint asserted the following direct claims:

1) a claim for declaratory relief (against Appellee Ofalt, Jr.), requesting that the trial court declare: a) that Appellee Ofalt, Jr. is "solely and exclusively responsible for any and all unsatisfied debts and obligations incurred by" Milestone and b) that Appellee Ofalt, Jr. is "liable over to [Appellant] for any and all sums paid by [Appellant] in satisfaction or partial satisfaction of any such debts or obligations associated with Milestone Ranch;"

2) breach of contract (against Appellee Ofalt, Jr.), based upon the allegation that Appellee Ofalt, Jr. "wrongfully detained, misappropriated, ... and/or diverted" funds from Milestone, Milestone Ranch, and Appellant;

3) breach of fiduciary duty (against Appellee Ofalt, Jr.), based upon the allegation that Appellee Ofalt, Jr. failed to: a) faithfully and loyally conduct the business of Milestone; b) conserve and protect the assets of Milestone; c) avoid self-dealing and the misappropriation and waste of assets belonging to Milestone; and, d) "act toward the deal with [Appellant] with the utmost fidelity, loyalty, diligence, prudence, honesty, care[,] and good faith;"

4) unjust enrichment (against the Ofalts and Milestone), based upon the averment that the three defendants all "received significant economic benefits from Milestone/Milestone Ranch for which [they] have not provided any corresponding compensation or other benefits to" Appellant and that the three defendants would be unjustly enriched if they were allowed to retain the benefits without providing adequate compensation to Appellant;

5) conversion (against the Ofalts and Milestone), based upon the averment that the three defendants knew or should have known that Appellant had an interest in Milestone and that the three defendants knowingly misappropriated, wasted, and converted the "assets and opportunities of Milestone/Milestone Ranch for their own use and benefit ... [without] compensating [Appellant] for [the] same;"

6) request for a constructive trust (against Appellee Ofalt, Jr.), based upon the averment that Appellee Ofalt, Jr. "utilized the assets and opportunities of Milestone/Milestone Ranch for purposes inconsistent with his agreement with [Appellant]," and requesting that the trial court enter an order "declaring that title to all assets of Milestone/Milestone Ranch be held in constructive trust for, and delivered to [Appellant], and that Milestone be thereafter terminated and dissolved."

*Id.* at ¶¶ 28–60.

On May 25, 2012, the Ofalts filed preliminary objections to Appellant's complaint. The preliminary objections asserted the following grounds for relief: 1) legal insufficiency of the pleading as to all counts in the complaint, as Appellant erroneously filed an individual action—as opposed to a shareholder's derivative action—for injuries that were suffered by the corporation;

---

**2.** Milestone is named in the caption and Appellant asserted claims against Milestone. *See* Appellant's Complaint, 1/4/12, at ¶¶ 46–56. However, Appellant never served Milestone with original process, no attorney ever entered an appearance on behalf Milestone, and Milestone (obviously) never participated in any of the underlying proceedings.

2) legal insufficiency of the pleading as to the "breach of fiduciary duty" claim, as Appellee Ofalt, Jr. did not owe Appellant any fiduciary duty; 3) insufficient specificity of the pleading as to the "breach of fiduciary duty" claim, as the complaint failed to state the source or basis of the alleged fiduciary duty that Appellee Ofalt, Jr. owed to Appellant; 4) statute of limitations bar as to the conversion claim against Appellee Ofalt, Sr.;[3] 5) legal insufficiency of the pleading as to the conversion claim against Appellee Ofalt, Sr., as "there is no allegation that [Appellee] Ofalt, Sr. knew or should have known that [his] actions were improper;" 6) and, insufficient specificity of the pleading as to the conversion claim against Appellee Ofalt, Sr., as the complaint failed to specify what property was converted. The Ofalts' Preliminary Objections, 5/25/12, at 1–9.

On July 13, 2012, the trial court entered an order, which sustained the Ofalts' preliminary objection in the nature of a demurrer as to all counts in the complaint. As the trial court held, Appellant did not have standing to institute a direct action for individual damages. Rather, the trial court held, Appellant's action was "more appropriate as a shareholder's derivative suit."[4] Trial Court Order, 7/13/12, at 1. The trial court's July 13, 2012 order also dismissed Appellant's complaint.[5] *Id.*

On August 2, 2012, Appellant filed a motion for reconsideration and requested that the trial court vacate its July 13, 2012 order. In the alternative, Appellant

---

**3.** *But see* Pa.R.C.P. 1028 note ("[t]he defense of the bar of … statute of limitations can be asserted only in a responsive pleading as new matter under [Pa.R.C.P.] 1030").

**4.** The trial court limited its ruling to the Ofalts' first numbered preliminary objection. The trial court noted that its disposition mooted the remainder of the Ofalts' preliminary objections.

**5.** Since the trial court's July 13, 2012 order flatly dismissed Appellant's complaint in its entirety (and did not grant Appellant leave to amend the complaint), the trial court's July 13, 2012 order constitutes a final order. *Rambo v. Greene*, 906 A.2d 1232, 1234 n. 2 (Pa.Super.2006) ("[a]s a general rule, an order sustaining preliminary objections and dismissing a complaint is a final and appealable order"). Moreover, we recognize that Milestone was named as a defendant to this action and that the trial court's July 13, 2012 order dismissed Appellant's complaint, in its entirety, in response to the Ofalts' preliminary objections. However, Milestone never became a "party to the action," as Appellant never served Milestone with original process and Milestone never entered an appearance in this case. *See Liles v. Balmer*, 439 Pa.Super. 238, 653 A.2d 1237, 1239 n. 1 (1994) (stating: "everyone whose name appears in the caption of a *praecipe* for writ of summons is not necessarily a party to the action; parties to an action are those who are named as such in the record and are properly served with process or enter an appearance"); *see also Burger v. Borough of Ingram*, 697 A.2d 1037, 1040–1041 (Pa.Cmwlth.1997) ("every name which appears in the caption of a complaint or pleading is not necessarily a party to the action"). Therefore, even if the trial court had not dismissed the complaint *in toto*, the trial court's July 13, 2012 order would have still constituted a final order, as the order sustained the Ofalts' preliminary objections and dismissed all claims that Appellant asserted against the only two "parties to the action." *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 492 n. 3 (Pa.Super.1998) (the appellant filed a complaint, which named Roxborough Memorial Hospital and Ronald Krier as defendants and which asserted negligence claims against both defendants; the appellant, however, only served the hospital with original process. At the summary judgment stage, only the hospital filed a motion for summary judgment. After the trial court granted the hospital's summary judgment motion and dismissed the appellant's claims against the hospital, the appellant filed an appeal to this Court. We held that the trial court's summary judgment order disposed of all claims against all parties in the action— and was thus a final, appealable order—as "Roxborough Memorial Hospital was the only proper party before the trial court.").

claimed that—if the trial court was "not inclined to allow [Appellant] to individually pursue claims against" the Appellees—the trial court should permit Appellant to file an amended complaint, so that Appellant could "pursue derivative claims against [Appellees] that relate back to the initial filing in this action." Appellant's Motion for Reconsideration, 8/2/12, at 1–3. The trial court did not act upon Appellant's motion for reconsideration and, on August 10, 2012, Appellant filed a notice of appeal to this Court.[6] Now on appeal, Appellant raises the following claims: [7]

1. Whether the trial court abused its discretion and/or erred as a matter of law in sustaining Appellees' preliminary objections?

2. Whether the trial court abused its discretion and/or erred as a matter of law in denying Appellant's motion for reconsideration?

3. Whether the trial court abused its discretion and/or erred as a matter of law in denying Appellant's request for leave to file an amended complaint so as to assert derivative claims?

Appellant's Brief at 5.[8]

Appellant first claims that the trial court erred when it sustained the Ofalts' preliminary objection in the nature of a demurrer and dismissed Appellant's complaint. This claim fails.

We have stated:

A preliminary objection in the nature of a demurrer is properly [sustained] where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true. In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the [preliminary objections] will result in the denial of claim or a dismissal of suit, [the preliminary objections may be sus-

---

6. On August 17, 2012, the trial court attempted to enter an order declaring that Appellant's motion for reconsideration was denied. *See* Trial Court Order, 8/17/12, at 1. Yet, since Appellant had already filed a notice of appeal in this case, the trial court did not have jurisdiction to enter an order on August 17, 2012 that purported to deny Appellant's motion for reconsideration. *See* Pa.R.A.P. 1701(a) ("[e]xcept as otherwise prescribed by these rules, after an appeal is taken ... the trial court ... may no longer proceed further in the matter"); *cf.* Pa.R.A.P. 1701(b)(3) ("[a]fter an appeal is taken ... the trial court ... may: ... (3) **Grant reconsideration** of the order

which is the subject of the appeal ...") (emphasis added).

7. The trial court did not order Appellant to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), and none was filed.

8. We will not separately address Appellant's second numbered claim on appeal, as it is duplicative of Appellant's first and third numbered claims.

tained] only where the case [is] free and clear of doubt.

*Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 966 (Pa.Super.2009) (internal citations, quotations, and corrections omitted).

In this case, the trial court dismissed Appellant's direct action against the Ofalts because, the trial court concluded, Appellant did not have standing to assert the particular claims that he pleaded against the Ofalts. Rather, the trial court held, the claims that Appellant wished to assert against the Ofalts belonged to Milestone and, thus, constituted shareholder derivative claims. Trial Court Opinion, 10/3/12, at 6. Now on appeal, Appellant argues that he has standing to institute a direct action against the Ofalts because, within his complaint, Appellant alleged that he was individually harmed by the Ofalts' actions. Appellant's Brief at 15. Alternatively, Appellant argues that, pursuant to Section 7.01(d) of the PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS, published by The American Law Institute (hereinafter "ALI Principles of Corporate Governance"), he is entitled to bring a direct action against the Ofalts because Milestone is a closely held corporation. *Id.* at 15–16. Neither argument entitles Appellant to relief.

With respect to the first subpart of Appellant's claim, Appellant contends that he has standing to sue the Ofalts directly because, within his complaint, he alleged that the Ofalts caused him individual injuries. *Id.* at 15.

■ In Pennsylvania, only the corporation and "a shareholder ... by an action in the right of the corporation" may bring a lawsuit and claim that a director breached the standard of care owed to the corporation. 15 Pa.C.S.A. § 1717. 15 Pa.C.S.A. § 1717, entitled "[l]imitation on standing," provides in relevant part:

> The duty of the board of directors, committees of the board and individual directors under [15 Pa.C.S.A. §] 1712 (relating to standard of care and justifiable reliance) is solely to the business corporation and may be enforced directly by the corporation or may be enforced by a shareholder, as such, by an action in the right of the corporation, and may not be enforced directly by a shareholder or by any other person or group.

15 Pa.C.S.A. § 1717. Further, under established Pennsylvania law, a shareholder does not have standing to institute a direct suit for "a harm [that is] peculiar to the corporation and [that is] only [ ] indirectly injurious to [the] shareholder." *Reifsnyder v. Pgh. Outdoor Adver. Co.*, 405 Pa. 142, 173 A.2d 319, 321 (1961). Rather, such a claim belongs to, and is an asset of, the corporation.

■ To have standing to sue individually, the shareholder must allege a direct, personal injury—that is independent of any injury to the corporation—and the shareholder must be entitled to receive the benefit of any recovery. *See id.; Burdon v. Erskine*, 264 Pa.Super. 584, 401 A.2d 369, 370 (1979) (*en banc*) ("[a]n injury to a corporation may ... result in injury to the corporation's stockholders. Such injury, however, is regarded as 'indirect', and insufficient to give rise to a direct cause of action by the stockholder"); *Fishkin v. Hi–Acres, Inc.*, 462 Pa. 309, 341 A.2d 95, 98 n. 4 (1975) ("[i]f the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, it is an individual action") (internal quotations and citations omitted); *White v. First Nat'l Bank*, 252 Pa. 205, 97 A. 403, 405 (1916) ("a stockholder can maintain a[ direct] action where the act of which complaint is made is not only a wrong against the corporation, but is also in violation of duties arising from contract or otherwise, and owing

to him directly.... But the difficulty with the plaintiff's case is that he has failed to show any injury to himself apart from the injury to the corporation, in which he is a stockholder"); *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del.2004) (holding that, to determine whether a shareholder's claim is direct or derivative, "a court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation"). As is hornbook law:

> If the injury is one to the plaintiff as a shareholder as an individual, and not to the corporation, for example, where the action is based on a contract to which the shareholder is a party, or on a right belonging severally to the shareholder, or on a fraud affecting the shareholder directly, or where there is a duty owed to the individual independent of the person's status as a shareholder, it is an individual action. If the wrong is primarily against the corporation, the redress for it must be sought by the corporation, except where a derivative action by a shareholder is allowable, and a shareholder cannot sue as an individual.... Whether a cause of action is individual or derivative must be determined from the nature of the wrong alleged and the relief, if any, that could result if the plaintiff were to prevail.
>
> In determining the nature of the wrong alleged, the court must look to the body of the complaint, not to the plaintiff's designation or stated intention. The ac-

tion is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent dissipation of its assets.... If damages to a shareholder result indirectly, as the result of an injury to the corporation, and not directly, the shareholder cannot sue as an individual.

12B FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5911 (2013); *see also* ALI Principles of Corporate Governance § 7.01(a) ("[a]n action in which the holder can prevail only by showing an injury or breach of duty to the corporation should be treated as a derivative action").

On appeal, Appellant argues that, in his complaint, he alleged "a personal injury to himself apart from any injury done to the corporation." Appellant's Brief at 14. Specifically, Appellant argues, he pleaded breach of contract and breach of fiduciary duty claims against Appellee Ofalt, Jr. and, further, averred that Appellee Ofalt, Jr.'s conduct caused: the Pennsylvania Department of Revenue to file a lien against Appellant; the IRS to "threaten[ ] to file a lien against Appellant;" and, the Small Business Administration to commence proceedings against Appellant. Appellant's Brief at 15–16.[9]

■ With respect to Appellant's contention that he pleaded viable, direct breach of contract and breach of fiduciary duty claims against Appellee Ofalt, Jr., we conclude, upon careful review of Appellant's complaint, that Appellant pleaded no cognizable, individual claim for either breach of contract or breach of fiduciary duty against Appellee Ofalt, Jr. Certainly, Ap-

**9.** Within Appellant's brief, Appellant focuses his argument upon the alleged actions of Appellee Ofalt, Jr.

pellant's complaint alleged that Appellee Ofalt, Jr.: wasted, diverted, and stole **corporate** assets; mismanaged the **corporation**; usurped **corporate** opportunities; failed to "remit [the **corporation's** required federal, state, and local tax] withholdings to the appropriate taxing authorities;" and, caused the **corporation** and restaurant to fail. *See* Appellant's Complaint, 1/4/12, at ¶¶ 7–27 and 32–45. Significantly, however, Appellant never alleged that Appellee Ofalt, Jr. breached a contractual or fiduciary duty owed to Appellant individually. Indeed, even on appeal, Appellant has failed to identify a single contractual duty that Appellee Ofalt, Jr. owed to Appellant. *See* Appellant's Brief at 14–18. Therefore, Appellant's claim that the trial court erred in dismissing his individual breach of contract count immediately fails.

As to Appellant's breach of fiduciary duty claim, Appellant argues on appeal that two decisions from the courts of common pleas "recognize[ ] that [50%] shareholders of a closely held corporation owe fiduciary obligations not only to the corporation itself but to each other as well." Appellant's Brief at 17. The two cited cases are *Baron v. Pritzker*, 52 Pa. D. & C.4th 14 (Pa.Com.Pl.2001) and *Korman Corp. v. Franklin Town Corp.*, 34 Pa. D. & C.3d 495 (Pa.Com.Pl.1984); and, on the basis of these two holdings, Appellant claims that he is entitled to relief. This claim also fails.

At the outset, Appellant has supported his claim concerning the existence of a fiduciary duty with absolutely no argument. Rather, within Appellant's brief, Appellant has simply cited to *Baron* and *Korman Corp.* and, in conclusory fashion, states that Appellee Ofalt, Jr. owes him a fiduciary duty. Appellant's Brief at 17–18. Yet, opinions from the courts of common pleas are not binding precedent in this Court. *See, e.g., Midwest Fin. Acceptance Corp. v. Lopez*, 78 A.3d 614, 627 (Pa.Super.2013). Therefore, since we are not bound by *Baron* or *Korman Corp.*—and since Appellant has provided us with no legal argument as to why Appellee Ofalt, Jr. would owe him a fiduciary duty in this case—Appellant's claim on appeal necessarily fails.

■ Further, in *Baron* and *Korman Corp.*, the courts were presented with a situation where a **minority** (or less powerful) shareholder was "frozen out" of a closely held corporation by a **majority** (or more powerful) shareholder. In both cases, the courts of common pleas applied the long-recognized principle of Pennsylvania law that "**majority shareholders** have a duty to protect the interests of the **minority**." *Ferber v. Am. Lamp Corp.*, 503 Pa. 489, 469 A.2d 1046, 1050 (1983) (emphasis added). The respective courts thus held that the oppressed shareholder had standing to assert a direct breach of fiduciary duty claim against the oppressor shareholder. *See Baron*, 52 Pa. D. & C.4th at 14 (in a closely held corporation, where a more powerful shareholder (with greater voting power) froze the less powerful shareholder out of the business, the less powerful shareholder could assert direct breach of fiduciary duty claim against the more powerful shareholder); *Korman Corp.*, 34 Pa. D. & C.3d at 495 (minority shareholder in a closely held corporation could assert direct breach of fiduciary duty claim against majority shareholders, because "majority shareholders stand as fiduciaries toward the … minority shareholders"); *see also Viener v. Jacobs*, 834 A.2d 546, 556 (Pa.Super.2003) ("Pennsylvania law holds that an attempt by a group of **majority shareholders** to 'freeze out' **minority shareholders** for the purpose of continuing the enterprise for the benefit of the majority shareholders constitutes a

breach of the majority shareholders' fiduciary duty to the minority shareholders") (emphasis added); *Ferber*, 469 A.2d at 1050 ("[i]t has long been recognized that **majority shareholders** have a duty to protect the interests of the **minority**") (emphasis added).

The principles of *Baron* and *Korman Corp.* do not, however, apply to the case at bar, as Appellant's complaint did not allege that he and Appellee Ofalt, Jr. were anything but equal shareholders in the corporation and Appellant never claimed that Appellee Ofalt, Jr. attempted to freeze him out of the business. Certainly, within Appellant's complaint, Appellant averred that he and Appellee Ofalt, Jr. were **"equal 50/50 partners in Milestone"** and that Appellant **willingly** "turned over the helm of the Milestone Ranch to [Appellee] Ofalt, Jr." Appellant's Complaint, 1/4/12, at ¶¶ 9 and 14. Therefore, Appellant neither pleaded in his complaint nor properly argued on appeal that Appellee Ofalt, Jr. owed him any particular fiduciary duty. Appellant's claim on appeal—that the trial court erred when it dismissed his individual breach of fiduciary duty count—thus fails.

Appellant also argues that, in his complaint, he pleaded that Appellee Ofalt, Jr. caused him certain other personal harms. Specifically, Appellant claims, he pleaded that Appellee Ofalt, Jr.'s conduct caused: the Pennsylvania Department of Revenue to file a lien against Appellant; the IRS to "threaten[ ] to file a lien against Appellant;" and, the Small Business Administration to commence proceedings against Appellant. Appellant's Brief at 15. According to Appellant, he has standing to individually sue Appellee Ofalt, Jr. to recover for these personal harms. *Id.* Appellant's argument is, however, unpersuasive, as his claims all allege "indirect" damages that resulted from an injury to

the corporation. *See Reifsnyder*, 173 A.2d at 321; *see also* 12B FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5911 (2013) ("[i]f damages to a shareholder result indirectly, as the result of an injury to the corporation, and not directly, the shareholder cannot sue as an individual"). As such, Appellant's claims are derivative in nature and cannot be maintained directly.

■ First, as pleaded in Appellant's complaint, the tax lien that the Pennsylvania Department of Revenue filed against Appellant (and the tax lien that the IRS has "threatened" to file against Appellant) arose out of the fact that Appellee Ofalt, Jr. failed to "remit [the **corporation's** required federal, state, and local tax] withholdings to the appropriate taxing authorities." Appellant's Complaint, 1/4/12, at ¶¶ 22–23. Given this fact, the gravamen of Appellant's claim is damage to the corporation. The fact that the corporate injury then caused Appellant harm does not allow Appellant to individually sue Appellee Ofalt, Jr.; rather, Appellant's injury is both **dependent upon** and **derivative to** the corporate injury. As such, the cause of action belongs to the corporation. *See Reifsnyder*, 173 A.2d at 321.

■ Further, with respect to the averment that "the [Small Business Association] has [ ] commenced proceedings against [Appellant] individually," we conclude that this claim of injury is also derivative in nature. Appellant's Brief at 15. Within Appellant's complaint, Appellant averred that he personally guaranteed the corporation's $250,000.00 and $50,000.00 loans. Appellant's Complaint, 1/4/12, at ¶ 11. Appellant also alleged that Appellee Ofalt, Jr.'s waste, mismanagement, and theft of corporate assets caused the corporation to default on its loan and then caused the Small Business Association to institute proceedings based upon Appel-

lant's personal guarantees. *Id.* at ¶ 25. Now on appeal, Appellant argues that the above allegations and averments are sufficient to demonstrate that he was personally and directly injured by Appellee Ofalt, Jr. Appellant's Brief at 15. This argument is incorrect.

As was true with the alleged injury that occurred from the tax lien, Appellant's claim of injury from his personal guarantee is **dependent upon** and **derivative to** the corporate injury. Therefore, the cause of action is derivative in nature. Indeed, Judge Frank H. Easterbrook of the United States Court of Appeals for the Seventh Circuit has thoroughly explained why personal guarantors of a corporate loan do not have standing to individually sue for corporate injuries—even in cases where the injuries have triggered the personal guarantee:

> Investors gain or lose with the firm; stockholders receive what's left after the corporation pays its debts. Lenders (guarantees are a form of contingent loan) also gain or lose with the firm, although lenders have more protection than equity investors.
>
> . . .
>
> When the injury is derivative, recovery by the indirectly-injured person is a form of double counting. "Corporation" is but a collective noun for real people—investors, employees, suppliers with contract rights, and others. A blow that costs "the firm" $100 injures one or more of those persons. If, however, we allow the corporation to litigate in its own name and collect the whole sum (as we do), we must exclude attempts by the participants in the venture to recover for their individual injuries. . . . Suits by shareholders, guarantors, and the like may well be efforts to divert the debtor's assets—to pay off one set of creditors (here, the [plaintiffs] ) while keeping the

proceeds out of the hands of the firm's other creditors.

> . . .
>
> The participants most directly affected by injury inflicted on the firm are the stockholders—for their investment is first to be wiped out. Creditors come next. Guarantors are contingent creditors. If the firm stiffs a creditor, that creditor can collect from the guarantor; the guarantor succeeds to the original creditor's claim against the firm. We know that creditors cannot recover directly for injury inflicted on a firm, so guarantors as potential creditors likewise cannot recover. One could say that guarantors are different because they may deal directly with the wrongdoer. The [plaintiffs'] guarantees were contracts between them and [the lender]. But direct dealing is not the same as direct injury. The [plaintiffs] do not contend that [the lender] broke the contracts by which the [plaintiffs] guaranteed [the corporation's] borrowings. They say, rather, that [the lender] violated statutory and contractual duties owed to [the corporation], which caused them derivative injury as guarantors. Recovery by [the corporation] would put the [plaintiffs] in the position they would have occupied had [the lender] lived up to its promises. There is therefore no reason other than a semantic one to treat guarantors differently from debt investors in the firm, and semantics (even if glorified as semiotics or hermeneutics) is not good enough.

*Mid–State Fertilizer Co. v. Exch. Nat'l Bank,* 877 F.2d 1333, 1335–1336 (7th Cir. 1989).

We agree with the above analysis and conclude that the trial court was correct in determining that all of Appellant's alleged injuries are derivative in nature. Appellant's claim to the contrary fails.

■ On appeal, Appellant also argues that—even if his claims are derivative in nature—he has standing to sue Appellee Ofalt, Jr. directly because Milestone is a closely held corporation.[10] Appellant's Brief at 16. In support of this argument, Appellant cites to Section 7.01(d) of the ALI Principles of Corporate Governance, which states:

(d) In the case of a closely held corporation [§ 1.06], the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

ALI Principles of Corporate Governance § 7.01(d) (1994).

Further, Appellant notes that, in *Cuker v. Mikalauskas*, 547 Pa. 600, 692 A.2d 1042 (1997), the Pennsylvania Supreme Court adopted certain sections of the ALI Principles of Corporate Governance and authorized the courts of the Commonwealth "to consider other parts of [the ALI Principles of Corporate Governance] and utilize [those parts] if they are helpful and appear to be consistent with Pennsylvania law." *Cuker*, 692 A.2d at 1049 n. 5. According to Appellant, even though the *Cuker* Court did not expressly adopt Section 7.01(d) of the ALI Principles of Corporate Governance, the Supreme Court would adopt the section if given the opportunity and the Supreme Court would allow Appellant to directly sue for the corporate injuries in this case. Although we believe that our Supreme Court might adopt some portions of Section 7.01(d), we conclude that our high Court would not allow individuals such as Appellant to sue directly—and individually recover—for injuries that were sustained by the closely held corporation. As such, we conclude that Appellant does not have standing to maintain a direct suit in this case.

In *Cuker*, our Supreme Court was confronted with a shareholder derivative suit, which was filed by minority shareholders of the large, publicly regulated utility company, PECO Energy Corporation. *Cuker*, 692 A.2d at 1043–1044. At issue before our high Court was whether "the 'business judgment rule' permits the board of directors of a Pennsylvania corporation to terminate derivative lawsuits brought by minority shareholders;" and, in answering the question before it, the *Cuker* Court expressly adopted certain sections of the ALI Principles of Corporate Governance dealing with the maintenance of shareholder derivative actions. *Id.* at 1043 and 1048–1049. Specifically, the *Cuker* Court adopted sections 7.02 through 7.10, and section 7.13 of the ALI Principles of Corporate Governance. Further, in its reasoning, the Court not only explained that the adopted sections were consistent with Pennsylvania law, but the Court also expressed its trust in the ALI:

The[ adopted] sections set forth guidance which is consistent with Pennsylvania law and precedent, which furthers the policies inherent in the business judgment rule, and which provides an appropriate degree of specificity to guide the trial court in controlling the proceedings in [the *Cuker*] litigation.

[In adopting sections 7.02 through 7.10, and section 7.13 of the ALI Principles of

---

**10.** Milestone is a closely held corporation, as it is "[a] business corporation that ... has not more than 30 shareholders." 15 Pa.C.S.A. § 1103.

Corporate Governance,] we have weighed many considerations. First, the opinion of the trial court, the questions certified to the Superior Court, and the inability of PECO to obtain a definitive ruling from the lower courts all demonstrate the need for specific guidance from this [C]ourt on how such litigation should be managed; the ALI principles provide such guidance in specific terms which will simplify this litigation. Second, we have often found ALI guidance helpful in the past, most frequently in adopting or citing sections of various Restatements; the scholarship reflected in work of the American Law Institute has been consistently reliable and useful. Third, the principles set forth by the ALI are generally consistent with Pennsylvania precedent. Fourth, although the ALI Principles [of Corporate Governance] incorporate much of the law of New York and Delaware, other states with extensive corporate jurisprudence, the ALI Principles [of Corporate Governance] better serve the needs of Pennsylvania.

*Id.* at 1049 (internal footnotes omitted).

Consistent with the above-expressed trust in the ALI, our Supreme Court stressed:

> Our adoption of the[ specified] sections is not a rejection of other sections not cited. We have identified and studied the sections which apply to this case and have adopted those which appear most relevant.
>
> The entire [ALI Principles of Corporate Governance], all seven parts, is a comprehensive, cohesive work more than a decade in preparation. Additional sections of the publication, particularly procedural ones due to their interlocking character, may be adopted in the future. Issues in future cases or, perhaps, further proceedings in this case might im-

plicate additional sections of the ALI Principles [of Corporate Governance]. Courts of the Commonwealth are free to consider other parts of the work and utilize them if they are helpful and appear to be consistent with Pennsylvania law.

*Id.* at 1049 n. 5.

Obviously, since PECO was not a closely held corporation, the *Cuker* Court did not have occasion to consider whether (or to what extent) Section 7.01(d) of the ALI Principles of Corporate Governance is consistent with Pennsylvania law. Nevertheless, on appeal, Appellant seizes upon the *Cuker* Court's declaration that "[c]ourts of the Commonwealth are free to consider other parts of the work and utilize them if they are helpful and appear to be consistent with Pennsylvania law." *See id.* Appellant claims that, if our Supreme Court were given the opportunity, the Court would adopt Section 7.01(d) *in toto* and would permit a court to "treat an action raising derivative claims as a direct action . . . and order an individual recovery." ALI Principles of Corporate Governance § 7.01(d) (1994). We disagree.

Again, Section 7.01(d) of the ALI Principles of Corporate Governance declares:

> (d) In the case of a closely held corporation [§ 1.06], the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

ALI Principles of Corporate Governance § 7.01(d) (1994).

The comment to the section provides a thorough explanation as to the policies and rationale underlying Section 7.01(d). In relevant part, the comment declares:

In some circumstances, the normal policy reasons for requiring a plaintiff to employ the form of the derivative action may not be present or will be less weighty, even though the action alleges in substance a corporate injury. In an important decision, the Massachusetts Supreme Judicial Court ruled that a closely held corporation may be treated as essentially an incorporated partnership, and granted a minority shareholder the right to sue individually. *See Donahue v. Rodd Electrotype Company of New England, Inc.* [367 Mass. 578], 328 N.E.2d 505 (Mass.1975). The rationale of *Donahue* was that the partnership and the closely held corporation were virtually interchangeable business forms, and thus a significant difference in their legal treatment was not warranted. In evaluating the logic of *Donahue*, it must be recognized that there are valid arguments on both sides of this question. On the one hand, the likelihood of a disinterested board is far smaller in such firms because the majority stockholders are likely also to be the firm's managers. Similarly, the concept of a corporate injury that is distinct from any injury to the shareholders approaches the fictional in the case of a firm with only a handful of shareholders. In addition, the procedural rules often applicable to derivative actions—such as a requirement that the plaintiff shareholder post a security-for-expenses bond—often make little sense in the context of a dispute between persons who are effectively incorporated partners. These rules were essentially intended to protect public corporations against "strike suits" by plaintiffs holding only a nominal interest in the firm. On the other hand, those decisions that have reached contrary results to *Donahue* have emphasized that a corporate recovery benefits creditors, while a direct recovery does not.

Both positions have merit, and § 7.01(d) therefore takes a compromise position. Essentially, § 7.01(d) follows the position taken by the Ninth Circuit in *Watson v. Button*, 235 F.2d 235 (9th Cir. 1956), which found that the usual policy reasons requiring an action that principally alleges an injury to the corporation to be treated as a derivative action are not always applicable to the closely held corporation. The facts of *Watson* are illustrative: a multiplicity of actions could not have resulted in that case, because there were only two shareholders; creditors could not have been injured, because each shareholder had agreed to be individually liable for corporate debts; finally, an individual recovery would not have prejudiced the rights of any other shareholders.... Although § 7.01(d) does not follow the fullest potential reach of *Donahue* to the extent of converting all intracorporate disputes that would be normally characterized as derivative actions into direct actions whenever the case involves a closely held corporation, it gives the court discretion to treat the action as direct if the policy considerations enumerated in Comment *d* are satisfied. In general, when a direct action is brought on behalf of the entire class of injured shareholders and the corporation's solvency is not in question, there is less reason to insist that the action be brought derivatively. The court should then have equitable power to treat the action as direct if the corporation is closely held, thereby avoiding procedural hurdles that were not designed to apply in such a case. If necessary, the

court can still protect creditors of the corporation by directing that adequate provision be made for the firm's creditors out of any recovery.

ALI Principles of Corporate Governance § 7.01 cmt. (1994)

We believe that our Supreme Court might adopt the more procedural aspects of Section 7.01(d). For example, and as a number of trial courts have held, we believe that our Supreme Court might adopt Section 7.01(d), to the extent that Section 7.01(d) would excuse the demand requirement for derivative actions that are filed on behalf of closely held corporations. *See, e.g., Cooper v. Rucci,* 2008 WL 942710 (W.D.Pa.2008) (unpublished memorandum) (applying Section 7.01(d) to excuse the demand requirement for a derivative action that was filed on behalf of a closely held corporation); *Nedler v. Vaisberg,* 427 F.Supp.2d 563 (E.D.Pa.2006) (same); *White v. George,* 66 Pa. D. & C.4th 129 (Pa.Com.Pl.2004) (same); *Top Quality Mfg., Inc. v. Sinkow,* 2004 WL 2554615 (Pa.Com.Pl.2004) (unpublished memorandum) (same); *Levin v. Schiffman,* 54 Pa. D. & C.4th 152 (Pa.Com.Pl.2001) (same). Indeed, and especially in the case of a corporation with only two shareholders, the demand requirement appears to be the very type of procedural rule that "make[s] little sense in the context of a dispute" between shareholders in a closely held corporation. ALI Principles of Corporate Governance § 7.01 cmt. (1994).

Yet, we conclude that our Supreme Court would not adopt the substantive aspects of Section 7.01(d). Specifically, we conclude that our Supreme Court would not simply ignore the corporate form and allow courts to "treat an action raising derivative claims as a direct action ... and order an individual recovery." ALI Principles of Corporate Governance § 7.01(d) (1994).

At the outset, it would appear that, in the vast majority of cases, the substantive aspects of Section 7.01(d) expressly conflict with Pennsylvania statutory law. As one treatise has stated, "[a]lmost all shareholder derivative actions involve allegations that officers or directors breached some fiduciary duty owed to the corporation." Law of Corporate Officers & Directors: Indemnification & Insurance § 1:25 (2013). Section 1717 of our Business Corporation Law, however, expressly limits standing to sue to enforce a director's duty to "the corporation" or to "a shareholder ... by an action in the right of the corporation." 15 Pa.C.S.A. § 1717. Thus, to the extent that Section 7.01(d) would permit a shareholder to sue directly—and individually recover—for a breach of a director's duty to the corporation, the section is not "consistent with Pennsylvania law" and, as such, would not be adopted by our Supreme Court. *See Cuker,* 692 A.2d at 1049 n. 5.

Further, Section 7.01(d) proposes granting courts the discretion to simply ignore the corporate form of a closely held corporation and treat the corporation as an "incorporated partnership." ALI Principles of Corporate Governance § 7.01 cmt. (1994). However, as Judge Easterbrook has explained:

> The premise of this extension may be questioned. Corporations are **not** partnerships. Whether to incorporate entails a choice of many formalities. Commercial rules should be predictable; this objective is best served by treating corporations as what they are, allowing the investors and other participants to vary the rules by contract if they think deviations are warranted. So it is understandable that not all states have joined the [ALI] parade.

*Bagdon v. Bridgestone/Firestone, Inc.,* 916 F.2d 379, 384 (7th Cir.1990) (emphasis in original).

We concur. Appellant willingly chose to incorporate and willingly chose to create the separate entity named Milestone. Redress for any injury done to Milestone belongs to Milestone. Appellant's attempt to directly recover for Milestone's injuries thus fails.

■ However, Appellant's third numbered claim on appeal does entitle Appellant to relief. According to Appellant, the trial court erred when it denied his request for leave to file an amended complaint, so that Appellant could assert derivative claims on behalf of the corporation. We agree.

■ As our Supreme Court has explained:

> Rule 1033 of the Pennsylvania Rules of Civil Procedure allows a party to amend his or her pleadings with either the consent of the adverse party or leave of the court. Leave to amend lies within the sound discretion of the trial court and the right to amend should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party.

*Werner v. Zazyczny,* 545 Pa. 570, 681 A.2d 1331, 1338 (1996) (internal quotations, citations, and footnote omitted). "The policy underlying this rule of liberal leave to amend is to insure that parties get to have their cases decided on the substantive case presented, and not on legal formalities." *Chaney v. Meadville Med. Ctr.,* 912 A.2d 300, 303 (Pa.Super.2006). Moreover, we have held:

> Even where a trial court sustains preliminary objections on their merits, it is generally an abuse of discretion to dismiss a complaint without leave to amend. There may, of course, be cases where it is clear that amendment is im-

possible and where to extend leave to amend would be futile. However, the right to amend should not be withheld where there is **some reasonable possibility** that amendment can be accomplished successfully. In the event a demurrer is sustained because a complaint is defective in stating a cause of action, if it is evident that the pleading can be cured by amendment, a court may not enter a final judgment, but must give the pleader an opportunity to file an amended pleading.

*In re Estate of Luongo,* 823 A.2d 942, 946 (Pa.Super.2003) (internal quotations, citations, and corrections omitted) (emphasis in original).

In the case at bar, Appellant seeks leave to amend his complaint so that he may add Milestone as a plaintiff and assert derivative claims on behalf of the corporation. *See* Pa.R.C.P. 2177 ("[a]n action shall be prosecuted by or against a corporation or similar entity in its corporate name"). We observe that Rule 1033 has been recently amended, and the rule now explicitly provides that a party may amend their pleading to "add a person as a party." The amended rule reads:

> A party, either by filed consent of the adverse party or by. leave of court, may at any time change the form of action, **add a person as a party,** correct the name of a party, or otherwise amend the pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

Pa.R.C.P. 1033 (effective January 23, 2014) (emphasis added).[11]

---

11. At the time of the underlying proceedings,      Rule 1033 read:

Moreover, even though our Supreme Court amended Rule 1033 after the trial court proceedings in this case, the new explanatory comment to Rule 1033 implies that the rule has always permitted the amendment of a pleading to add a party. The comment declares:

> Rule 1033 has been amended to specifically state that an amendment may add a person as a party. It is the practice of litigants and trial courts to refer to Rule 1033 when a party seeks to amend a pleading to add another party. The purpose of this amendment is to eliminate any uncertainty as to whether a motion to amend a pleading to add an additional party is governed by Rule 1033. Pa.R.C.P. 1033 cmt. (effective January 23, 2014).

In this case, the trial court realized that Appellant's complaint essentially alleged derivative claims. *See* Trial Court Order, 7/13/12, at 1 (declaring that Appellant's action was "more appropriate as a shareholder's derivative suit"). Yet, the trial court did not grant Appellant leave to amend the complaint, so that Appellant could properly plead the claims on behalf of the corporation. This was an abuse of discretion. Here, since Appellant requested the trial court to grant him leave to amend his complaint and since—as the pleadings now stand—the claims Appellant wishes to assert on behalf of the corporation are not clearly barred by the applicable statute of limitations,[12] we conclude that the trial court erred when it did not grant Appellant leave to amend his com-

plaint. We must therefore vacate the trial court's order in part and remand for further proceedings.

Order vacated in part. Case remanded. Jurisdiction relinquished.

MUNDY, J., concurs in the result.

---

A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amend-

ment may be made to conform the pleading to the evidence offered or admitted.
Pa.R.C.P. 1033 (effective January 1, 1947 through January 22, 2014).

**12.** Certainly, Appellees have never argued that the derivative claims would be barred by the statute of limitations.