J-S32003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JENNIFER WOYTOVICH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSE STORM TEAM LLC, BROKER'S | : | No. 1733 MDA 2024 |
| REALTY AND JESSE STORM | : | |

Appeal from the Order Entered October 24, 2024
In the Court of Common Pleas of Northumberland County Civil Division at
No(s):  CV-2021-01367

BEFORE:   LAZARUS, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:        **FILED: SEPTEMBER 12, 2025**

Jennifer Woytovich appeals from the order, entered in the Court of Common Pleas of Northumberland County, granting summary judgment in favor of Appellees Jesse Storm Team, LLC, Broker's Realty, and Jesse Storm (collectively, Defendants) and dismissing Woytovich's complaint for lack of standing.  After review, we affirm.

Woytovich is a New York resident and a shareholder[1] of JEMA Investment Properties, LLC (JEMA), a Pennsylvania limited liability company (LLC).   In July 2019, JEMA purchased two properties (Properties) located in Ashland  and  Kulpmont.   Woytovich  alleged  that  the  Properties  had  been

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Woytovich testified that, when JEMA was formed, she had a partner.  **See** Deposition of Jennifer Woytovich, 5/3/24, at 54.  However, she stated that he "opted out" of the LLC when he became "too busy."  **Id.**

previously owned and controlled by Defendant Storm and purchased through Defendant Broker's Realty, a Pennsylvania firm. *See* Woytovich Complaint, 8/23/21, at 1-2; *see also* Woytovich Answer to New Matter, 11/10/21, at 3 ("Defendant was the seller of the properties to [Woytovich] on behalf of her LLC."). In 2019, JEMA entered into two property management agreements (Agreements) with Defendants to provide management and maintenance on the Properties. Woytovich ultimately terminated Defendants' property management services relationship "[a]s a result of [Defendants'] incomplete and substandard work" on the Properties which caused significant damage to the interior of the Properties. Woytovich Complaint, 8/23/21, at 3-4 (unpaginated). Woytovich alleged that, after the Agreements were terminated, Defendants "ha[ve] retained and failed to account for $3[,]275.00 in security deposits from tenants" and have also presented her with estimates for various items on the Properties that need repairs, including roofs, porches, and basements. *Id.* at 4. Throughout 2019 and 2020, Woytovich alleged that Defendants sent her multiple invoices seeking additional payment for various repairs Defendants made to the Properties. *Id.*

On August 23, 2021, Woytovich filed a complaint against Defendants claiming negligence, breach of contract, breach of fiduciary duty, and unjust enrichment, and also requesting an accounting. *See id.* The complaint alleged that Defendants failed to perform various services pursuant to the parties' Agreements. Specifically, Woytovich's complaint alleged Defendants committed the following wrongs:

- o  as a direct and proximate result of the negligent acts of Defendant and its employees, Plaintiff suffered financial loss, additional remediation, additional testing and repairs, hotel bills;

- o  Defendants have refused at all times to: (1) make arrangements for distribution, or to pay to Plaintiff or Plaintiff's tenants, any of the moneys retained from tenants, including security deposits and (2) complete or completely complete the renovations, repairs, and projects for which estimates were presented and Defendants were paid;

- o  Defendants failed to act in Plaintiff's interest and breached their fiduciary duties by failing and refusing to maintain the properties in habitable condition such that the properties could generate income; retention of funds for Defendants' own uses and purposes; authorizing and performing work that was duplicative, unnecessary; and self-dealing in nature; and in failing and refusing to perform work necessary to accomplish their responsibilities pursuant to the management contract; and

- o  Defendants have refused at all times to provide an accounting of funds collected from tenants.

Woytovich's Complaint, 8/23/21, at 7-10.

On October 29, 2021, Defendants filed an answer and new matter, claiming that one of the Properties was sold to Woytovich in a private sale, but that Brokers Realty had no involvement in that sale. *See* Defendants' Answer and New Matter, 10/29/21, at 2. The answer also claimed that the other Property "was never owned or controlled by [] Defendants." *Id.* In its new matter, Defendants alleged, among other things, that Woytovich is not the legal owner of either of the Properties and, therefore, "lacks standing to pursue any claim for damages." *Id.* at 15. Woytovich filed an answer to Defendants' new matter, alleging that "Defendants abrogated the role of

- 3 -

property manager under the agreements and abandoned the agreements."
Woytovich Answer to New Matter, 11/10/21, at 2 (unpaginated).

On June 27, 2024, Defendants filed a motion for summary judgment against Woytovich alleging that JEMA, not Woytovich, owns the Properties. *See* Defendants' Summary Judgment Motion, 6/27/24, at 2. Attached to the Defendants' motion are copies of the deeds to the Properties showing that JEMA purchased one of the Properties on July 8, 2019, for $7,985.00, and that JEMA purchased the other property on July 11, 2019, for $3,500.00. *Id.*; *see also* Administrator's Deed for Kulpmont Property, 7/11/19, at 1; Administrator's Deed for Ashland Property, 7/8/19, at 1. Moreover, the Agreements, attached to both Woytovich's complaint and Defendants' summary judgment motion, list the contracting parties as Defendants and **JEMA**, not Woytovich. *Id.* Thus, Defendants claimed that Woytovich lacked standing to sue as an individual owner of JEMA, where she did not personally own the Properties or contract with Defendants to buy the Properties, and where the alleged injury is primarily to the corporation itself. *Id.* at 6-7.

On October 24, 2024, the trial court granted Defendants' summary judgment motion concluding that Woytovich's action arose "out of residential property management agreements relating to separate properties . . . owned by JEMA, [that] JEMA is not a party-Plaintiff[ in the instant action, and that, u]nder Pennsylvania Law, [Woytovich], as a shareholder in JEMA, does not have standing to bring suit for a harm peculiar to the corporation, that is JEMA." Trial Court Order, 10/24/24, at 1 (unpaginated). The court also noted

that, as an indispensable party, Plaintiff's failure to join JEMA in the underlying suit implicates the trial court's subject matter jurisdiction. *See id.* at 2 (unpaginated), citing **Simone v. Alam**, 303 A.3d 140 (Pa. Super. 2023).

Woytovich filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Woytovich raises the following issue for our consideration: "Should the rule set out in **Hill v. Ofalt**, [85 A.3d 540 (Pa. Super. 2014),] which precludes a 'stockholder' from pursuing a direct action on behalf of the company in which she owns an interest[,] be relaxed for single[-]member limited liability companies and other close companies?" Woytovich's Brief, at 8.

In **Hill**, plaintiff-shareholder filed a lawsuit, in his individual capacity, against his shareholder-partner (Partner) and their corporation, Milestone Restaurant Company, Inc. (Milestone) *Id.* at 545. Plaintiff and Partner were the "sole officers, directors[,] and shareholders of Milestone." *Id.* at 544. Plaintiff alleged that Partner had unlawfully used the business "as a 'cash cow' to benefit himself, his family[,] and friends." *Id.* Ultimately, Milestone was forced to close, with over $250,000.00 in tax arrears and a tax lien levied against Plaintiff and Milestone in the amount of $79,000.00. *Id.* Plaintiff and Milestone were faced with debts in excess of half a million dollars. *Id.* at 544-45.

The Plaintiff's complaint in **Hill** asserted claims for declaratory relief, breach of contract, breach of fiduciary duty, unjust enrichment, and conversion and requested a constructive trust. *Id.* at 545. Partner filed

preliminary objections claiming legal insufficiency of the pleading where the injuries suffered were sustained by the corporation, not Plaintiff individually. *Id.* The trial court sustained Partner's preliminary objections and dismissed all counts of the complaint, concluding that Plaintiff "did not have standing to institute a direct action for individual damages, [but that the action] was 'more appropriate as a shareholder's derivative suit.'" *Id.* at 546. Plaintiff filed an unsuccessful motion for reconsideration.

On appeal, Plaintiff argued that the trial court should have reconsidered its decision and, in the alternative, that it should have permitted him to file an amended complaint to pursue derivative claims against Partner and Milestone that "relate back to the initial filing in th[e] action." *Id.* at 547. Our Court acknowledged that, under Pennsylvania law, "a shareholder does not have standing to institute a direct suit for 'a harm [that is] peculiar to the corporation and [that is] only indirectly injurious to [the] shareholder." *Id.* at 548 (citation omitted). In order to sue individually, a shareholder "must allege a direct, personal injury—that is independent of any injury to the corporation—and the shareholder must be entitled to receive the benefit of any recovery." *Id.* (citations omitted). However, our Court ultimately vacated the trial court's order and remanded the matter, concluding that the trial court abused its discretion by not granting Plaintiff leave to file an amended complaint to plead derivative claims on behalf of Milestone. *Id.* at 558.

Instantly, Woytovich urges us to "loosen the *Hill* [] rule as applied to small[,] limited liability companies [where JEMA is a] single member [] LLC[,]

- 6 -

which is an entirely different type of business entity that permits operation with a much greater informality than stock companies." Woytovich's Brief, at 9-10. Citing commentators who author legal cyclopedias and other secondary sources, Woytovich asks this Court to reconsider *Hill* where there is "no danger of multiple suits, no interested creditors, and no harm to justice" if she is permitted to sue Defendants in her individual capacity as a shareholder. *Id.* at 11-12. We decline to accept her invitation.

Here, both Agreements list "JEMA Investment Properties Limited Liability Company" as the owner and BrokersRealty.com and Jesse Storm as the broker company and licensee, respectively. *See* Landlord-Agency Contract for Poplar Street (Kulpmont) Property, 9/30/19, at 1; *see* Landlord-Agency Contract for Walnut Street (Ashland) Property, 6/30/19, at 1. Although Woytovich's initials are written on the bottom left hand of each page of the Agreements in boxes designated as "Owners Initials," she is clearly not a party to the Agreements, but rather a signatory on behalf of the LLC. *See* Deposition of Jennifer Woytovich, 5/3/24, at 8-9. In fact, Woytovich never disputed the fact that she was not the named owner on the property management agreements. *See* Pa.R.C.P. 1035.2 (summary judgment proper where "there is no genuine issue of material fact as to a necessary element of the cause of action").[2]

---

[2] The deeds for both Properties also list JEMA, not Woytovich, as grantee. *See* Administrator's Deed for Kulpmont Property, 7/11/19, at 1; Administrator's Deed for Ashland Property, 7/8/19, at 1.

Under **Hill**, Woytovich may not sue in her own right where any wrong committed by Defendants directly impacted JEMA, the LLC. Moreover, we decline to carve out an exception under **Hill** to make its holding inapplicable to LLCs or closely held companies. Just as the shareholders of an LLC are afforded special protections, **see** 15 Pa.C.S.A. § 8834(a) ("debt, obligation[,] or other liability of a limited liability company is solely the debt, obligation[,] or other liability of the company" and a "member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation[,] or other liability of the company solely by reason of being or acting as a member or manager"), Woytovich cannot also reap the benefits for harms incurred by the LLC where she was neither a party to the Agreements nor directly suffered harm. **See** 15 Pa.C.S.A. § 8881 (b) (member of LLC may only maintain direct action if he or she pleads and proves "an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the [LLC]").[3]

_____

[3] Unlike the plaintiff in **Hill**, Woytovich did not seek to amend her complaint to include a derivative action within the applicable statute of limitations. **See** 15 Pa.C.S.A. §§ 8883 (members have standing to commence and maintain derivative action to enforce rights that members claims could be but have not been asserted by company).

Order affirmed.[4]

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/12/2025

---

[4] Even if Woytovich were a proper party with standing in the instant matter, the Agreements mandate that all disputes or claims that arise from the Agreements first be submitted to mediation. *See* Landlord Agency Contract, 6/30/19, at 5; *id.*, 9/30/19, at 5.