J-A16004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ERIC SCHMECHEL, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JACK GAITHER, | |
| Appellee | No. 2971 EDA 2014 |

Appeal from the Order September 24, 2014
in the Court of Common Pleas of Northampton County
Civil Division at No.: C48-CV-2012-7946

BEFORE: LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED JUNE 24, 2015**

Appellant, Eric Schmechel, appeals from the trial court's order granting the summary judgment motion of Appellee, Jack Gaither, in this action for contribution and breach of fiduciary duty. After careful review, we affirm the trial court's order.

The trial court summarized the factual and procedural history as follows:

> This case finds its genesis in the sale of a business and the transactions that followed. The facts are relatively undisputed and are as follows. The parties were each half-owners of a corporation known as Vinyl Sign Supplies, Inc. ("VSS"). In May 2008, Sign Supply U.S.A., LLC ("SSU") offered to purchase the assets of VSS. Eventually, VSS and SSU entered into an Asset Purchase Agreement ("APA"), pursuant to which SSU agreed to purchase the assets of VSS for the sum of $3,800,000.00.

---

[*] Retired Senior Judge assigned to the Superior Court.

Following the sale, [Appellant] planned to work for SSU, whereas [Appellee] opted to retire. Accordingly, as part of the overall transaction, [Appellant] entered into an employment agreement with SSU, and [Appellee] entered into a non-compete agreement with SSU.

At the time of the closing, held on August 29, 2008, SSU placed ten percent of the purchase price into escrow ("the Holdback"), to be distributed to the parties pursuant to the terms of an escrow agreement. The Holdback served two purposes: first, to ensure that [Appellee] complied with his non-compete agreement; and second, to offset any reduction in the working capital of VSS between the completion of the due diligence period and the date of closing. Pursuant to the APA, if the working capital of VSS was less than $850,000.00, a corresponding sum would be deducted from the Holdback, effectively reducing the purchase price paid by SSU.

[Appellant] and [Appellee] entered into a separate agreement regarding the required Holdback (the "Holdback Agreement"). Under the Holdback Agreement, [Appellant] and [Appellee] agreed that the Holdback would come, exclusively, from [Appellant's] portion of the sale proceeds. [Appellee] agreed to indemnify [Appellant] for that portion of the Holdback not distributed to [Appellant] by SSU if it was determined that [Appellee] violated his non-compete agreement with SSU. Otherwise, the entirety of the Holdback, or whatever portion was eventually released, would be due and owing exclusively to [Appellant]. The parties reached this agreement because [Appellee] wished to have his entire share of the sale proceeds at closing, due to his plan to retire, while [Appellant] intended to work for SSU.

Eventually, SSU contested the calculation of VSS' working capital and refused to release the Holdback. In response, an action was initiated by [Appellant in the name of] VSS against SSU seeking the distribution of the Holdback. The litigation was ultimately settled, with SSU retaining $129,384.64 of the Holdback and the remainder being released to [Appellant].

Contending that [Appellee] should indemnify him for the amount of the Holdback retained by SSU, [Appellant] initiated this action against [Appellee] by filing a [c]omplaint on August 9, 2012. [Appellee] filed an [a]nswer and [n]ew [m]atter on

- 2 -

September 18, 2012. On October 9, 2012, [Appellant] filed a [r]eply to [the] [n]ew [m]atter. . . .

The gravamen of [the] [c]omplaint is that, prior to the closing of the sale of VSS to SSU, the parties, as co-owners of VSS, made several cash payments to themselves and otherwise altered their handling of VSS' cash flow. According to [Appellant], these activities negatively impacted the working capital of VSS and triggered SSU's refusal to release the Holdback. [Appellant] argues that, while he was solely responsible for funding the Holdback, it was the actions of both parties that caused less than the full amount of the Holdback to be distributed to him. . . .

(Trial Court Opinion, 9/24/14, at 1-4) (record citations and footnotes omitted).

On September 24, 2014, the court granted Appellee's motion for summary judgment. On October 16, 2014, Appellant timely appealed.[1]

Appellant raises the following questions for our review:

1. Whether the trial court committed an error of law and/or abused its discretion by granting [Appellee's] motion for summary judgment on the determination that the Holdback Agreement between [Appellant] and [Appellee] required the entry of summary judgment in favor of [Appellee] despite the lack of a claim in [Appellant's] complaint to enforce and/or for breach of the Holdback Agreement?

2. Whether the trial court committed an error of law and/or abused its discretion by granting [Appellee's] motion for summary judgment in the form of a demurrer to [Appellant's] cause of action for common law contribution despite that [sic]

---

[1] Pursuant to the trial court's order, Appellant filed a timely Rule 1925(b) statement on November 6, 2014. The court entered its Rule 1925(a) opinion on December 1, 2014, relying on its September 24, 2014 opinion. *See* Pa.R.A.P. 1925.

- 3 -

fact [Appellant] pled a possible claim under a cognizable legal theory?

3. Whether the trial court committed an error of law and/or abused its discretion by granting [Appellee's] motion for summary judgment on [Appellant's] cause of action for breach of fiduciary duty without considering the alleged fiduciary duty [Appellee] owed [Appellant] to pay [Appellant] fifty percent (50%) of the money paid to SSU from the escrowed funds to settle its claims against VSS?

(Appellant's Brief, at 4) (some capitalization omitted).

Initially, we are cognizant of our scope and standard of review:

Our scope of review of an order granting summary judgment is plenary. [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. . . . Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the [fact-finder]. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

***Stein v. Magarity***, 102 A.3d 1010, 1013 (Pa. Super. 2014) (citation omitted).

In his first issue, Appellant argues that the court erred in granting Appellee's summary judgment motion "based on its interpretation of paragraph [two] of the Holdback Agreement . . . despite the lack of any claim in [Appellant's] [c]omplaint for breach of the Holdback Agreement and/or to enforce the Holdback Agreement." (Appellant's Brief, at 18) (record citation omitted). Specifically, Appellant states that "[t]he Holdback [A]greement and whether or not [Appellee] violated his non-compete is irrelevant . . . ." (***Id.*** at 20). We disagree.[2]

It is well-settled that:

> . . . [W]hen interpreting the language of a contract, this Court's goal is to ascertain the intent of the parties and give it effect. When the words of a contract are clear and unambiguous, the intent of the parties must be ascertained from the language employed in the contract, which shall be given its commonly accepted and plain meaning.

***TruServ Corp. v. Morgan's Tool & Supply Co., Inc.***, 39 A.3d 253, 260 (Pa. 2012) (citations omitted).

Here, the record reflects that Appellant agreed to fund the entire Holdback from the sale proceeds he would receive at the time of the closing. (***See*** Holdback Agreement, 2008, at 1 ¶ 1). Furthermore, the Holdback

---

[2] We note that the parties agree that Appellee did not violate his non-compete agreement or the Holdback Agreement. (***See*** Trial Ct. Op., at 2 n.1, 10-11; Appellant's Brief, at 18-20; Appellee's Brief, at 6, 9-10).

Agreement created Appellee's indemnification duty. (**See id.** at 1-2 ¶ 2).

The trial court explained that:

> It is clear from a plain reading of the entire paragraph that the parties intended for [Appellee] to indemnify [Appellant] for the Holdback, without an allocation of fault, if the **sole reason** for SSU's refusal to pay the Holdback was based upon an allegation that [Appellee] breached his non-compete agreement with SSU. . . . [The] provision [relied upon by Appellant], read in context, sets forth [Appellee's] obligation to indemnify [Appellant] where SSU's refusal to release the Holdback is based upon [Appellee's] breach of the non-compete agreement **and one other cause**. . . . Accordingly, both scenarios triggering [Appellee's] obligation to indemnify [Appellant] require an allegation by SSU that [Appellee] breached his non-compete agreement. . . .
>
> *   *   *
>
> . . . [Appellee] was only obligated to indemnify [Appellant] if SSU alleged that [Appellee] breached his non-compete agreement with SSU. As no such allegation has been made, [Appellee] has no obligation to indemnify [Appellant] under the plain language of the Holdback Agreement. . . .

(Trial Ct. Op., at 10-11) (emphases in original). Upon review, we agree and conclude that the record supports the court's determination and that it did not commit an error of law or abuse its discretion. **See Stein**, **supra** at 1013. Accordingly, Appellant's first issue does not merit relief.

In his second issue, Appellant argues that the court erred in "fail[ing] to consider the equitable cause[] of action of common law contribution . . . ." (Appellant's Brief, at 24). Specifically, he asserts that he "paid more than his fair share, fifty percent (50%), of the settlement consideration to SSU . .

. [and Appellee] has received more than his fifty percent (50%) of the net proceeds from the sale of VSS' assets . . . ." (***Id.*** at 23).  We disagree.

It is well-settled that the equitable obligation of contribution sounds in contract, however, the underlying claim must sound in tort.  ***See Mattia v. Sears Roebuck & Co.***, 531 A.2d 789, 791 (Pa. Super. 1987), *appeal denied*, 546 A.2d 622 (Pa. 1988) ("[C]ontribution may be asserted where: (1) the parties combined to produce the plaintiff's injury; (2) the parties are each liable in tort to the plaintiff; and (3) a tortfeasor has discharged the common liability by paying more than his *pro rata* share.").

Furthermore, Pennsylvania has adopted the Uniform Contribution Among Tortfeasors Act (UCATA), 42 Pa.C.S.A. §§ 8321-8327, which recognizes a right of contribution among joint tortfeasors.  ***See*** 42 Pa.C.S.A. § 8324.

Here, the record reflects that Appellant does not allege that the parties are joint tortfeasors.  (***See*** Appellant's Brief, at 22-24).  The trial court explained that "[t]here are simply no allegations of a tort within this case. Thus, the parties cannot be joint tort-feasors.  Therefore, [Appellee] is entitled to judgment on [Appellant's] claim for contribution, as a matter of law."  (Trial Ct. Op., at 12-13).  Upon review, we agree and conclude that the record supports the court's determination and that it did not commit an error of law or abuse its discretion.  ***See Stein***, ***supra*** at 1013.  Accordingly, Appellant's second issue does not merit relief.

In his final issue, Appellant argues that the court erred in finding that "there was no evidence that [Appellee] acted unilaterally, deceitfully, clandestinely, or . . . without [Appellant's] approval . . . [and] failed to consider the fiduciary duty owed by [the parties] to each other to share equally in the costs of their [joint] actions . . . ." (Appellant's Brief, at 30). We disagree.

Here, the record reflects that "[t]he parties were each half-owners of a corporation known as [VSS]." (Trial Ct. Op., at 1). However, Appellant claims that "[a]s an equal shareholder with [Appellant] in VSS, [Appellee] is nothing more than an incorporated partner . . . ." (Appellant's Brief, at 27) (suggesting partnership law applies).

This Court has recently refused to recognize fiduciary duties between equal shareholders. *See Hill v. Ofalt*, 85 A.3d 540, 550-51 (Pa. Super. 2014) (identifying fiduciary duties exist between majority and minority shareholders). Furthermore, "our Supreme Court would not simply ignore the corporate form . . . . Corporations are **not** partnerships." *Id.* at 556 (citations omitted and emphasis in original). Therefore, Appellee did not owe a fiduciary duty to Appellant.

Moreover, the trial court explained that:

> . . . [Appellant] has not offered any evidence that [Appellee] took any action regarding VSS, SSU, the APA, the Holdback Agreement, or the working capital of VSS without the approval and full knowledge of [Appellant].

\* \* \*

. . . The fact that these [disbursements and increased payables], **which were agreed upon by both parties**, resulted in only [Appellant] bearing the consequences is in itself insufficient to trigger a breach of a fiduciary duty claim. . . .

(Trial Ct. Op., at 13-14) (emphasis in original). The court further noted that "the doctrine of unclean hands would bar recovery in any event."[3] (*Id.* at 14-15, n.4) (citation omitted). Upon review, we agree and conclude that the record supports the court's determination and that it did not commit an error of law or abuse its discretion. *See Stein*, *supra* at 1013. Accordingly, Appellant's final issue does not merit relief.

Order affirmed.
Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/2015

_____

[3] The doctrine of unclean hands bars equitable relief to a party who acted in bad faith. *See PNC Bank v. Kerr*, 802 A.2d 634, 642 (Pa. Super. 2002), *appeal denied*, 815 A.2d 634 (Pa. 2002). Here, the record reflects that Appellant acknowledges that he participated in the disbursement of the funds. (*See* Appellant's Brief, at 9, 11-12, 14, 29). Therefore, Appellant would be barred from recovery.