J-A23026-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| ROBERT GARFIELD, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| EQT CORP., | |
| Appellee | No. 254 WDA 2019 |

Appeal from the Order Entered January 29, 2019
In the Court of Common Pleas of Allegheny County
Civil Division at No(s):  GD-17-14222

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                FILED  DECEMBER 6, 2019

Appellant, Robert Garfield, on behalf of himself and all others similarly situated, appeals from the trial court's January 29, 2019 order, in which it sustained Appellee's, EQT Corp., preliminary objections and dismissed Appellant's second amended complaint ("SAC") with prejudice.  We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> This is a shareholder class action brought under Pennsylvania law by Appellant..., a shareholder of EQT...[,] against the members of EQT's Board of Directors ("Board") and EQT.[1]  The action arises

_____

[1] As Appellant's issues on appeal only pertain to EQT, and not to the members of the Board, he filed an application to amend the caption by removing all named appellees except for EQT, which we granted.  See Order Granting Application to Amend, 6/5/2019 (directing the prothonotary "to amend the

out of EQT's acquisition of Rice Energy ("Rice") for stock and cash, pursuant to an agreement and plan of merger entered into on June 19, 2017. On that date, EQT and Rice announced that they had entered into a definitive Agreement and Plan of Merger under which EQT would acquire all of the outstanding shares of Rice common stock for total consideration of approximately $6.7 billion — consisting of .37 shares of EQT common stock and $5.30 in cash per share of Rice common stock ("the Merger").

Appellant contends that the Merger and the related issuance of additional EQT shares to pay for the Merger was fundamentally unfair to EQT shareholders. Appellant[] also contend[s] that [the Board and EQT] persuaded EQT shareholders to support an unfair acquisition by misrepresenting the value of the transaction and by misrepresenting and concealing other conflicts of interest.

[] Appellant filed his Amended Shareholder Class Action Complaint on December 19, 2017, asserting claims for Fundamental Unfairness pursuant to [15] Pa.C.S.[] § 1105 (Count I), Intentional Interference with Voting Rights (Count II), and … Unjust Enrichment (Count III).[1] Preliminary objections were then filed[,] and by [o]rder dated August 21, 2018[,] this [c]ourt sustained all of the objections and dismissed the Amended Complaint without prejudice. Thereafter, … Appellant filed his [SAC,] reasserting Counts I-III of [his] Amended Complaint and asserting two new causes of action: negligence against EQT (Count IV) and Breach of Contract between EQT and its[] shareholders (Count V).[2[, 2]] Preliminary [o]bjections were filed to

_____

caption on the docket to reflect that the only remaining defendant/Appellee is EQT…") (single page).

[2] As we will discuss in more detail infra, Appellant explains:

Counts [IV] and [V] of [Appellant's SAC] … seek to hold EQT directly responsible for its own misconduct independent of its [officers or directors]. Specifically, Count [IV] asserts that EQT was negligent, grossly negligent, and/or reckless when it breached longstanding duties owed to its shareholders by repeatedly failing to supervise [its officers or directors] or change the bonus structure that rewarded them for making unprofitable acquisition[s] to the detriment of [Appellant and members of the proposed class]. Count [V] similarly asserts that EQT breached a

these new counts and by [o]rder dated January 29, 2019, this [c]ourt sustained the objections with prejudice to Counts IV and V[,] and the within appeal followed.

> [1] On December 19, 2017, the parties filed a Stipulation of Dismissal (without prejudice) as to all derivative claims, in which [Appellant] withdrew "his demand upon EQT's Board, dismissed without prejudice any and all derivative claims (whether so denominated or not) set forth in the Verified Shareholder Class Action and Derivative Complaint," and agreed not to assert any further derivative claims (whether so denominated or not)....

> [2] As stated in Appellant's response to [EQT's] [p]reliminary [o]bjections, "Counts [I, II, and III] have merely been restated, without change, to preserve Appellant's appellate rights in light of the [c]ourt's previous order dismissing those claims without prejudice, as is explained in the [SAC] at paragraph 129 entitled 'RESERVATION[.']  Instead of amending those previously asserted [c]ounts, Appellant's [SAC] amends by adding two new causes of action at Counts [IV] (negligence, gross negligence, recklessness) and [V] (breach of contract).["]

Trial Court Opinion ("TCO"), 4/16/2019, at 2-3 (unnumbered pages; internal citation and original brackets omitted).

As referenced by the trial court, Appellant timely filed a notice of appeal from its order sustaining EQT's preliminary objections and dismissing his SAC with prejudice.  The trial court subsequently ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and he timely complied.  Thereafter, the trial court issued its Rule 1925(a) opinion.

_____

> material contractual provision in its articles of incorporation to act lawfully by doing the acts alleged in Count [IV].

Appellant's Brief at 13.

Appellant raises two issues for our review:

I. Whether the trial court erred in dismissing Count [IV] of Appellant's [SAC], which asserts a claim for negligence, gross negligence, and recklessness against EQT only, based upon its determination that: (a) Count [IV] is a derivative claim improperly recast as a direct claim, and (b) EQT does not owe any direct duty to Appellant and other EQT shareholders.

II. Whether the trial court erred in dismissing Count [V] of Appellant's [SAC], which asserts a breach of contract claim against EQT only, based upon its determination that EQT's Articles of Incorporation did not create a contractual obligation between EQT and EQT shareholders including Appellant to act lawfully when conducting its business.

Appellant's Brief at 4 (emphasis in original).[3]

As we address Appellant's issues, we remain mindful of our standard of

review:

A preliminary objection in the nature of a demurrer is properly [sustained] where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all

---

[3] Although Appellant raises only two issues in his statement of the questions involved, he does not divide the argument section of his brief into two corresponding parts. Instead, he divides it into four, incongruous sections. We admonish Appellant for his lack of compliance with Pa.R.A.P. 2119(a). See Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); Donaldson v. Davidson Bros., Inc., 144 A.3d 93, 99 n.9 (Pa. Super. 2016) (determining that the appellant failed to comply with Rule 2119(a) where the appellant's brief did not "present and develop eight arguments in support of the eight questions raised"). Notwithstanding, Appellant's noncompliance does not preclude our review.

inferences reasonably deducible therefrom must be admitted as true.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the [preliminary objections] will result in the denial of claim or a dismissal of suit, [the preliminary objections may be sustained] only where the case [is] free and clear of doubt.

Hill v. Ofalt, 85 A.3d 540, 547-48 (Pa. Super. 2014) (citation omitted; brackets in original).

In Appellant's first issue, he challenges the trial court's dismissal of Count IV of his SAC, which lodged a claim for negligence, gross negligence, and recklessness against EQT. Appellant's Brief at 4. In that claim, Appellant contends that EQT breached various duties it owed to Appellant "by creating and defiantly maintaining a corporate-governance environment and payment structure that incentivizes [its officers and directors] to act in a manner that is to the detriment of [Appellant and members of the proposed class]." SAC, 10/26/2018, at ¶ 136 (emphasis omitted). Specifically, Appellant alleges that EQT's bonus structure rewards its officers and directors primarily based on production growth, instead of profitability. See id.; see also Appellant's Brief at 7-8. According to Appellant, this structure led EQT to make a series of unprofitable acquisitions, including the Rice Merger. See SAC at ¶¶ 137-38;

Appellant's Brief at 8-9.[4]  Despite these unprofitable acquisitions, Appellant states that "EQT has refused to correct its corporate-governance environment as well as its incentive and bonus payment structure." SAC at ¶ 138.  Further, he avers that "[g]iven what [EQT's officers and directors] stood to gain, it was or should have been reasonably foreseeable to EQT that [they] would ensure the Merger by any means necessary, including deceit[,]" and "[w]ith strong incentive and virtually no oversight, [EQT's officers and directors] caused EQT to conceal [from,] and/or misrepresent material information [to, Appellant] and other [proposed class members] ... in conjunction with soliciting shareholders' votes in support of the Merger and Share Issuance." Id. at ¶¶ 140, 140(a).  Thus, Appellant contends that "EQT's failure and refusal to correct its toxic corporate-governance structure and bonus and incentive payment system caused [Appellant's and the proposed class members'] damages ... because it was a substantial factor in bringing about the harms inflicted upon [them]." Id. at ¶ 143.  He insists that "[u]nlike [EQT's officers and directors] who received corresponding bonuses, job retention and other benefits ... from the Rice Merger, [Appellant and members of the proposed class] received only the dilution of their stock and the reduction of its value from the Rice Merger." Id.  Accordingly, he insists that EQT's maintenance of

_____

[4] Appellant explains that "[p]roduction growth ... can be achieved by any means, including simply by acquiring production volume from a third party, such as Rice." SAC at ¶ 51.  Thus, he says that "EQT's senior management ... [has] a strong personal financial incentive to pursue acquisitions, no matter the cost to EQT shareholders or unprofitability, in order to achieve ... bonus and incentive compensation targets." Id. at ¶ 52.

such a corporate environment was negligent, grossly negligent, and/or reckless. Id. at ¶ 144.

In dismissing this count, the trial court determined that "it is a derivative claim improperly recast as a direct claim. Count IV attempts to ascribe the statutory duties that directors or officers owe solely to the corporation as common law duties allegedly owed to the shareholders." TCO at 5. It reasoned that, "[b]oth the [Pennsylvania] Business Corporations Law ("BCL"), 15 Pa.C.S. § [1101], et. seq.[,] and the decisions thereof firmly establish that a corporation's directors are charged with exercising the powers the BCL grants to the corporations, and those directors owe duties only to the corporation[,] not to individual shareholders." Id. (citations omitted). Moreover, the trial court ascertained that, "even if Appellant's claims were not derivative, he offers no legal support for the assertion that business corporations [themselves] owe a direct duty to shareholders that arguably co-exists alongside the BCL. [T]he BCL alone describes the powers and duties of a corporation and its[] directors and officers." Id. at 7.

Presently, Appellant argues that the trial court erred because Count IV "[can]not be derivative because it asserts a claim against EQT only that is based solely on EQT's own duties and misconduct in breach thereof that existed and occurred prior to the events related to the Rice Merger and independent of the duties or misconduct of EQT's officers[ and/or] directors...." Appellant's Brief at 16 (emphasis in original). He says that, "[h]ad the Rice Merger taken place, but EQT made reasonable efforts to better

supervise or implement its bonus structure, than a direct action would not be merited against EQT in this matter." Id. He advances that, "[b]ecause EQT is the sole wrongdoer in Count [IV], EQT cannot be held to sue itself for any harm resulting from its own misconduct. This is precisely why Count [IV] cannot be a derivative claim and is a direct claim against EQT only." Id. at 17 (emphasis in original). He also purports that "this Commonwealth has recognized for over a century that a corporation has a trust relation with its shareholders, meaning it must supervise its officers and directors in good faith to safeguard the capital it holds in trust for its shareholders." Id. at 14 (citing Pennsylvania Co. for Insurances on Lives & Granting Annuities v. Franklin Fire Ins. Co., 37 A. 191, 192 (Pa. 1897)). Furthermore, he states that, "even assuming arguendo that corporations do not owe their shareholders a fiduciary duty to supervise, the trial court's determination would still be incorrect because EQT's special relationship with its shareholders as well as the specific facts of this case required that it use reasonable care to protect them from highly foreseeable misconduct by its officers and directors." Id. at 15 (emphasis in original; citation omitted). We reject Appellant's arguments.

The BCL provides, in relevant part, that "[u]nless otherwise provided by statute or in a bylaw adopted by the shareholders, all powers enumerated in section 1502 (relating to general powers) and elsewhere in this subpart or otherwise vested by law in a business corporation shall be exercised by or under the authority of, and the business and affairs of every business

corporation shall be managed under the direction of, a board of directors." 15 Pa.C.S. § 1721(a). Section 1502 includes, inter alia, the power to "conduct its business, carry on its operations, have offices and exercise powers granted by this subpart or any other provision of law in any jurisdiction...." 15 Pa.C.S. § 1502(a)(15). This Court has discerned:

> In Pennsylvania, only the corporation and "a shareholder … by an action in the right of the corporation" may bring a lawsuit and claim that a director breached the standard of care owed to the corporation. 15 Pa.C.S.[] § 1717. [Section] 1717, entitled "[l]imitation on standing," provides in relevant part:
>
>> The duty of the board of directors, committees of the board and individual directors under [15 Pa.C.S. §] 1712 (relating to standard of care and justifiable reliance) is solely to the business corporation and may be enforced directly by the corporation or may be enforced by a shareholder, as such, by an action in the right of the corporation, and may not be enforced directly by a shareholder or by any other person or group.
>
> 15 Pa.C.S.[] § 1717. Further, under established Pennsylvania law, a shareholder does not have standing to institute a direct suit for "a harm [that is] peculiar to the corporation and [that is] only [] indirectly injurious to [the] shareholder." Reifsnyder v. Pgh. Outdoor Adver. Co., … 173 A.2d 319, 321 ([Pa.] 1961). Rather, such a claim belongs to, and is an asset of, the corporation.
>
> To have standing to sue individually, the shareholder must allege a direct, personal injury — that is independent of any injury to the corporation — and the shareholder must be entitled to receive the benefit of any recovery. See id.; Burdon v. Erskine, … 401 A.2d 369, 370 ([Pa. Super.] 1979) (en banc) ("[a]n injury to a corporation may … result in injury to the corporation's stockholders. Such injury, however, is regarded as 'indirect', and insufficient to give rise to a direct cause of action by the stockholder"); Fishkin v. Hi–Acres, Inc., … 341 A.2d 95, 98 n.4 ([Pa.] 1975) ("[i]f the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, it is an individual action") (internal quotations and citations omitted); White v. First Nat'l Bank, … 97 A. 403, 405 ([Pa.] 1916) ("a

stockholder can maintain a[ direct] action where the act of which complaint is made is not only a wrong against the corporation, but is also in violation of duties arising from contract or otherwise, and owing to him directly.... But the difficulty with the plaintiff's case is that he has failed to show any injury to himself apart from the injury to the corporation, in which he is a stockholder"); Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031, 1039 (Del. 2004) (holding that, to determine whether a shareholder's claim is direct or derivative, "a court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation"). As is hornbook law:

> If the injury is one to the plaintiff as a shareholder as an individual, and not to the corporation, for example, where the action is based on a contract to which the shareholder is a party, or on a right belonging severally to the shareholder, or on a fraud affecting the shareholder directly, or where there is a duty owed to the individual independent of the person's status as a shareholder, it is an individual action. If the wrong is primarily against the corporation, the redress for it must be sought by the corporation, except where a derivative action by a shareholder is allowable, and a shareholder cannot sue as an individual.... Whether a cause of action is individual or derivative must be determined from the nature of the wrong alleged and the relief, if any, that could result if the plaintiff were to prevail.

> In determining the nature of the wrong alleged, the court must look to the body of the complaint, not to the plaintiff's designation or stated intention. The action is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent dissipation of its asset.... If damages to a shareholder result indirectly, as the result of an injury to the corporation, and not directly, the shareholder cannot sue as an individual.

12B FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5911 (2013); see also ALI Principles of Corporate Governance § 7.01(a) ("[a]n action in which the holder can prevail only by

showing an injury or breach of duty to the corporation should be treated as a derivative action").

Hill, 85 A.3d at 548-49 (some brackets added).

Appellant has not demonstrated that the trial court erred in determining that this is a derivative claim. On appeal, Appellant emphasizes that he is suing EQT only, not EQT's board. However, as Hill instructs, we "must look to the body of the complaint, not to the plaintiff's designation or stated intention." Id. at 549. EQT aptly observes that "[t]he BCL makes clear that it is a corporation's directors who act on behalf of the corporation when evaluating business decisions such as the Merger, and as such those directors are answerable (potentially) for any actionable consequences only in a derivative suit." EQT's Brief at 19. In other words, "[i]t is the directors who manage and oversee the conduct of the corporation's business; the corporation does not manage or oversee the Board. Nor could it." Id. EQT astutely adds that, "[a]lthough [Appellant] named EQT as the only defendant in the [SAC], his claims criticize the Board's judgment and its compliance with its fiduciary duties — claims which have consistently been characterized as derivative." Id. at 23; see also id. at 32-33 ("While Pennsylvania courts have recognized that duties exist in this context, those duties are owed by a corporation's directors to the corporation, not by the corporation to common shareholders. [C]orporations can be sued for negligence in certain situations, but those suits are not based on business judgment or the plaintiff's shareholder status — they are based on duties owed to the public as a whole."); 15 Pa.C.S. § 1717, supra. Moreover, "the injuries upon which

[Appellant's] claims are based are not unique to him. He articulates the harm as the dilution of EQT shares and a decline in EQT's share price resulting from poor management decisions. These are harms to all EQT shareholders." EQT's Brief at 28 (citations omitted). For these reasons, we conclude that the trial court did not err in dismissing Count IV of the SAC, as it is a derivative claim masked as a direct claim.[5] Therefore, no relief is due.

In Appellant's second issue, he argues that the trial court erred in determining that "EQT's Articles of Incorporation did not create a contractual obligation between EQT and EQT shareholders including Appellant to act lawfully when conducting its business." Appellant's Brief at 4. He explains that "EQT's articles of incorporation, under which common stock is issued to shareholders, expressly provides that: 'The purposes for which the Company is incorporated under the [BCL] of the Commonwealth of Pennsylvania are to engage in, and to do any lawful act concerning, any or all lawful business for which corporations may be incorporated under said

_____

[5] Even if Appellant's count were not derivative, Appellant has failed to demonstrate that EQT owes a direct duty to Appellant and other shareholders to supervise its officers and directors. The cases that Appellant relies on to establish that EQT owes its shareholders a fiduciary duty to supervise its officers and directors, and/or a duty of reasonable care, are unconvincing. Many of his cases precede the BCL and/or do not appear to apply to the type of claim he is attempting to raise here. See Appellant's Brief at 28-29, 30-31, 35, 36-38, 47. Although he urges us that "new factual circumstances cannot defeat a tort claim[,]" see Appellant's Brief at 29 (citing Dittman v. UPMC, 196 A.3d 1036, 1046 (Pa. 2018)), we agree with EQT that "[Appellant's] suit … presents a classic factual scenario which would typically give rise to a derivative claim, but in which he asserts a novel duty in an attempt to manufacture a direct claim." See EQT's Brief at 21 n.6.

[BCL]....'" Id. at 56 (emphasis in original; citation omitted). He alleges that "EQT breached its express contractual obligation in its articles of incorporation by acting in an unlawful manner." Id.

> The trial court dismissed this claim, reasoning:
>
> Rather than forming a contract between EQT and its[] shareholders, the [a]rticles of [i]ncorporation form a contract between the Commonwealth and EQT shareholders. Manheim Borough v. Mainheim Water Co., 78 A. 93, 94 (Pa. 1910) (it is well settled law that an act of incorporation is a "contract between the state and the stockholders[]"). EQT's [a]rticles of [i]ncorporation do not create any independent duties owed by EQT to shareholders. Rather the articles merely create the corporation's existence. 15 Pa.C.S.[] § 1309(a).
>
> Similarly, the Statement of EQT's Corporate Purpose does not establish a contract between EQT and its[] shareholders as it has no features of a contract — it does not set any definite terms, nor does it provide for an exchange of consideration or a mutuality of obligations. See[] Yarnell v. Almy, 703 A.2d 535, 538 (Pa. Super[.] 1997) ("[T]o form a contract, there must be an offer, acceptance and consideration or mutual meeting of the minds[.]"); Bash v. Bell Tel. Co. of Pennsylvania, 601 A.2d 825, 829 (Pa. Super. 1992) ("[C]ontract[] actions lie only for breaches and duties imposed by mutual consensus agreements between particular individuals[.]").

TCO at 7-8 (emphasis in original).

Nevertheless, Appellant insists that "a corporation's articles of incorporation constitute a contract between the corporation and its shareholders." Appellant's Brief at 57 (citing two cases, Relational Investors LLC v. Sovereign Bancorp, Inc., 417 F.Supp.2d 438 (S.D.N.Y. 2006), and Healy v. E. Bldg & Loan Ass'n, 17 Pa. Super. 385 (1901)). He further says that, "[a]s for whether EQT breached its contractual duty to its shareholders, Appellant has clearly pled sufficient facts as detailed in the

arguments above to demonstrate unlawful conduct in violation of EQT's contract with its shareholders because it is axiomatic in this Commonwealth that common law torts, such as negligence, constitute unlawful acts." Id. at 58 (citations omitted; emphasis in original). Again, we reject these arguments.

Problematically, Appellant does not analyze the Relational or Healy cases he cites to, nor provide us with their context, even in the face of EQT's stating that they are distinguishable and inapposite to the matter at hand. See EQT's Brief at 46-47.[6] He also does not address the trial court's observation that the statement of corporate purpose does not create a contract as it "does not set any definite terms, nor does it provide for an exchange of consideration or a mutuality of obligations." TCO at 8. As EQT discerns, Appellant "fails to identify any actual duties and instead points to a description of the business purposes for which EQT was incorporated." EQT's Brief at 43 (citation omitted). Finally, EQT compellingly recognizes that "the breach of contract claim is just another improper attempt to bring a derivative claim directly." Id. at 41 (footnote omitted). We concur. Accordingly, no relief is due, and the trial court properly dismissed Count V.

Order affirmed.

_____

[6] Despite this argument by EQT, Appellant does not attempt to respond to it in his reply brief by discussing these cases in more depth. We decline to conduct this analysis for him.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/6/2019